UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

---

| | | |
|---|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA, | : | Docket No.: 1:20-cv-296 |
| Plaintiff, | : | |
| -vs.- | : | |
| HARTFORD FIRE INSURANCE COMPANY, | : | |
| Defendant. | : | |

## COMPLAINT

The Plaintiff, Safeco Insurance Company of America ("Safeco"), by and through its undersigned counsel, files this *Complaint* and respectfully states as follows:

### PARTIES

1. The Plaintiff is a New Hampshire-domiciled insurance company with its principal place of business in Boston, Massachusetts.

2. The Defendant, Hartford Fire Insurance Company ("Hartford"), is a Connecticut-domiciled insurance company with its principal place of business in Hartford, Connecticut.

### NATURE OF THE ACTION

3. Safeco brings against Hartford for equitable contribution, equitable subrogation and breach of contract, on the basis that Hartford breached the terms of a commercial liability insurance policy issued to VOCO America ("VOCO"), a manufacturer of dental products, when it failed to provided insurance coverage to VOCO's employee, Brian Roberge ("Roberge"), with respect to allegations made in a suit (the "*Underlying Suit*") brought against him by Christopher Hayden ("Hayden").

4. In the Underlying Suit, Hayden sought damages for certain physical injuries allegedly caused to Hayden by Roberge's negligence during the course of Roberge's employment with VOCO, while both Hayden and Roberge were attending a dental industry conference in 2016.

5. When Hartford failed to provide coverage to Roberge with respect to the allegations made in the *Underlying Suit*, Safeco, Roberge's homeowner's insurer, provided defense and indemnity to Roberge, and ultimately settled the suit against Roberge. Safeco now seeks equitable contribution from Hartford with respect to the settlement amount paid by Safeco on behalf of Roberge, and equitable subrogation to Roberge's claims against Hartford for failing to provide him with defense and indemnification under the Hartford policy issued to VOCO and with respect to the settlement amount.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000. Safeco is a corporation domiciled in New Hampshire. Hartford is domiciled in Connecticut.

7. Pursuant to 28 U.S.C. § 1391, venue is appropriate in this Court because Safeco is domiciled within the District.

## FACTUAL BACKGROUND

8. On or about June 9, 2016, both Hayden and Roberge were attending the Maine Dental Association's Annual Conference (the "Conference") that took place at the Samoset Resort in Rockport, Maine.

9. Roberge was employed in a sales position with VOCO America ("VOCO"), a manufacturer of dental products, and he was attending the Conference on behalf of his employer

and as part of his duties as an employee of VOCO, in order to network with other members of the industry and to increase the sales of his employer's dental products.

10. Roberge was not at the Conference for personal reasons, and he was not there vacationing with his wife or family. Roberge attended the Conference solely on behalf of his employer VOCO and solely as part of his sales position duties.

11. At the time, Hayden was employed in a sales position by Henry Schein, Inc. ("Schein"), a worldwide distributor of medical and dental supplies including vaccines, pharmaceuticals, financial services and equipment, and he was attending the Conference on behalf of his employer and as part of his duties as an employee of Schein.

12. Roberge had attended the annual Conference for a number of years prior to June 2016, as part of his salesperson's role at VOCO, to increase sales of employer's dental products, and in order to meet representatives of other companies who would be a position to buy his employer's dental products from him.

13. Roberge had been trying for many years to arrange to meet and network with representatives of Schein, a dental products distributor, as part of his job duties with VOCO.

14. At the time of the 2016 Conference, Roberge had already been acquainted with Hayden, having met him at other dental industry events over several years.

15. While at the Conference, Roberge met up again with Hayden, and on the afternoon of June 9, 2016, Roberge played golf with Hayden and persons who were attending the Conference. Roberge considered this to be networking with representatives of Schein, and part of his job duties with VOCO.

16. Later that same day, Roberge was invited to dine with Hayden and other representatives from Schein and other industry persons who were all attending the Conference.

17. Roberge, Hayden, other representatives from Schein and other persons who were all attending the Conference went out to dinner at a restaurant away from the Conference hotel.

18. Roberge, Hayden and others from the Conference subsequently went out to bar after dining at the restaurant.

19. At the end of the evening, Roberge and Hayden returned to the Samoset. Both Roberge and Hayden were staying in the main multi-storied building at the Samoset Resort. While they were both near to the hotel elevators that would take them back to their respective rooms, Roberge attempted to give Hayden a "good-bye hug" to thank him for his hospitality over the day and introducing him to other Schein employees. Roberge believed that there was a strong possibility of being able to obtain future sales of his employer's products to Schein.

20. When Roberge stepped forward to hug Hayden, he made contact with Hayden's chest. Hayden allegedly lost his balance, stepped backwards, and fell. Hayden alleges that he suffered a head injury as a result of the fall.

21. Hayden went to the emergency room of a nearby hospital the following morning (June 10, 2016), with complaints of severe headaches and blurring vision. Hayden was diagnosed with a concussion.

22. On May 31, 2019, Hayden filed the *Underlying Suit* against Roberge. It was captioned *Christopher Hayden v. Brian Roberge*, Case No. 218-2019-CV-00711, in the Rockingham County Superior Court. Hayden sought damages for certain physical injuries allegedly caused to Hayden by Roberge's negligence.

23. In the *Underlying Suit*, Hayden alleged that, on the evening of June 9, 2016, Roberge "negligently grabbed" [Hayden] as he was exiting a hotel elevator causing [Hayden] to fall backwards, striking his head against the back of the elevator causing [Hayden] to suffer

severe injury and damages."

24. Because of Roberge's purported negligence, Hayden alleged that he suffered damages and losses including "serious personal injury, severe and permanent physical and bodily injuries, extreme pain and suffering, ongoing medical procedures and therapies. Large and continuing medical expenses, emotional distress and mental anguish, loss of enjoyment of life, lost wages and earning capacity and the costs and expenses of litigation."

25. The sole count pled in the *Underlying Suit* was for "negligence," where Hayden alleged that Roberge was under a duty to exercise reasonable care towards [Hayden]" and that Roberge "breached that duty of care in that he negligently, recklessly, and carelessly, and without warning to [Hayden], grabbed [Hayden] as he was exiting a hotel elevator causing [Hayden] to fall backwards into the elevator striking his head on the rear of the elevator," resulting in injury to Hayden.

26. Safeco defended Roberge against the *Underlying Suit*.

27. Safeco repeatedly tendered the *Underlying Suit* to Hartford, but Hartford denied the tender. Hartford never explained its position in a letter; instead, its adjuster simply sent Safeco a short e-mail stating that the incident did not occur when Roberge was acting in furtherance of VOCO's business.

28. The *Underlying Suit* settled on February 10, 2020, with Roberge agreeing to pay Hayden the sum of $125,000 (the "Settlement Amount") in full and complete satisfaction of all claims.

29. Safeco funded the settlement of the *Underlying Suit*.

30. Safeco has incurred more than $8,000 in the defense of the *Underlying Suit*.

31. Having paid to settle the claims against its policyholder, Safeco is subrogated to

all of Roberge's rights.

## COUNT I – BREACH OF CONTRACT

32. All of the allegations contained in Paragraphs 1 – 31 above are incorporated herein by reference.

33. Hartford issued a commercial liability insurance policy to VOCO that was in effect on June 9, 2016 (the "Hartford Policy"). Under the terms and conditions of the Hartford policy, Hartford was required to defend and indemnify employees of VOCO that committed negligent acts in the course of their employment that resulted in property damage or bodily injury to third parties.

34. Under the provisions of the Hartford Policy, Hartford was required to defend and indemnify Roberge, as an employee of VOCO, with respect to the allegations of negligence made against him in the *Underlying Suit*.

35. Hartford refused to defend or indemnify Roberge with respect to the allegations made against him in the *Underlying Suit*.

36. In refusing to defend and indemnify Roberge, Hartford breached the Hartford Policy.

37. Hartford's breach of the Hartford Policy caused damages to Roberge in the full amount of the settlement and costs incurred in his defense.

## COUNT II – EQUITABLE SUBROGATION

38. All of the allegations contained in Paragraphs 1 - 37 above are incorporated herein by reference.

39. When Hartford failed to defend and indemnify Roberge under the Hartford Policy with respect to the allegations made in the *Underlying Suit*, Safeco, Roberge's homeowner's

insurer, provided defense and indemnity coverage to Roberge, and ultimately settled the suit against Roberge.

40. Safeco is subrogated to Roberge's rights against Hartford, and it has the right of equitable subrogation against Hartford, with respect to all monies paid by Safeco on behalf of Roberge, including without limitation both the costs of defense against the *Underlying Suit* and the settlement payment.

41. Safeco paid the settlement to protect the interests of Roberge, as well as its own interests, and it was required to pay the claim against Roberge in order to avoid liability in any potential claim against it for breach of the implied covenant of good faith and fair dealing. Safeco did not act as volunteer in paying the Settlement Amount but made the payment to settle the *Underlying Suit* brought against its insured Roberge.

42. Safeco was not primarily liable for the obligation to pay the Settlement Amount; instead, Hartford was primarily liable to make the Settlement Amount, because under the provisions of the Hartford Policy, Hartford was required to defend and indemnify Roberge, as an employee of VOCO, with respect to the allegations of negligence made against him in the *Underlying Suit*. Moreover, Safeco paid the entirety of the Settlement Amount, and allowing equitable subrogation against Hartford for the Settlement Amount would not work any injustice to the rights of any third party.

43. Under the principles of equitable subrogation, Safeco is entitled to recover from Hartford for the payment of the Settlement Amount and the attorney's fees and costs it incurred to defend Roberge against the *Underlying Suit*, which is an amount in excess of $75,000.

## COUNT III – EQUITABLE CONTRIBUION

44. All of the allegations contained in Paragraphs 1- 43 above are incorporated herein

by reference.

45. After receiving a copy of the *Complaint* in the *Underlying Suit*, Safeco reached out to Hartford, informing Hartford that Safeco believed that Hartford should be defending Roberge with respect to the allegation set forth in the *Underlying Suit*, because, under the provisions of the Hartford Policy, Hartford was required to defend and indemnify Roberge, as an employee of VOCO, with respect to the allegations of negligence made against him in the Underlying Suit, inasmuch as Roberge was engaging in activities on behalf of his employer VOCO at the time of the accident.

46. On or about December 11, 2019, Hartford denied Safeco's request for contribution to the defense and indemnification of Roberge in the *Underlying Suit*. Hartford also denied Safeco's request that it agree to contribute towards any ultimate judgment against or settlement made on behalf Roberge in the *Underlying Suit*.

47. Safeco is entitled to contribution from Hartford for the payment of the Settlement Amount, because Safeco paid the entire loss and is entitled to be reimbursed by Hartford either in whole or in part, as Hartford is primarily liable for the loss that resulted in the payment of the Settlement Amount. Safeco is also entitled to contribution from Hartford for the attorney's fees and costs expended by Safeco to defend Roberge in the Underlying Suit.

48. Safeco is entitled to equitable contribution from Hartford for the payment of the Settlement Amount and the attorney's fees and costs it incurred to defend Roberge against the *Underlying Suit*, which is an amount in excess of $75,000.

## PRAYER FOR RELIEF

WHEREFORE, for all of the foregoing reasons, Safeco respectfully requests judgment against Hartford as follows:

a. Finding that Hartford breached its contract of insurance by failing to defend and indemnify Roberge against the allegations in the *Underlying Suit*, entitling Roberge or his subrogee to recover all sums incurred as a consequence of said breach, including without limitation the Settlement Amount and the fees and costs of Roberge's defense in the *Underlying Suit*;

b. In the alternative, granting Safeco equitable subrogation against Hartford with respect to the Settlement Amount and those fees and costs that it paid to defend Roberge against the *Underlying Suit*;

c. In the alternative, granting Safeco equitable contribution from Hartford, in whole or in part, with respect to the Settlement amount and those fees and costs that it paid to defend Roberge against the *Underlying Suit*;

d. Costs and interest on the same, from the date that such sums were incurred to the entry of judgment;

e. Interest on all sums from the date that judgment is entered until such sums are paid in full;

f. Safeco's attorneys' fees and costs incurred in this action; and

g. Such other and further relief as to this Court seems just and proper.

Respectfully submitted,

**SAFECO INSURANCE COMPANY OF AMERICA,**

By its attorneys,

SULLOWAY & HOLLIS, P.L.L.C.

By: */s/ Alexander G. Henlin*
    Alexander G. Henlin (# 17112)

9 Capitol Street
Concord, New Hampshire 03301
(603) 223-2800 telephone
(603) 226-2404 facsimile
ahenlin@sulloway.com

Dated: March 2, 2020